# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1450 | **DATE** | 12/27/2004 |
| **CASE TITLE** | Stone vs. Doerge | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment (R. 336-1) is granted in part and denied in part. Plaintiff's motion to strike (R. 88-1) is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 2 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 93 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AVERY J. STONE, as trust of </br>the Anita M. Stone Family Trust and </br>Avery J. Stone Trust, </br></br>        Plaintiff, </br></br>v. </br></br>DAVID DOERGE, DAVID DOERGE </br>d/b/a DOERGE CAPITAL MANAGEMENT, </br>and BALIS, LEWITTES & COLEMAN, INC., </br></br>        Defendants. | No. 02 C 1450 |

DOCKETED
DEC 2 8 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Avery J. Stone, as trustee of the Anita M. Stone Family Trust and the Avery J. Stone Trust, brought this securities fraud action against Defendants David Doerge, individually and d/b/a Doerge Capital Management, and Balis, Lewittes & Coleman, Inc. Defendants have moved for summary judgment. As discussed in detail below, Defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff Avery Stone is the trustee of the Avery J. Stone Trust and the Anita M. Stone Family Trust. (R.72-1, Defs. Stmt. Facts ¶ 1.) Defendant David Doerge ("Doerge") was formerly a registered representative with Defendant Balis, Lewittes & Coleman, Inc. ("Balis"), a broker-dealer. (*Id.* ¶¶ 2,3.) Defendant Doerge Capital Management is the name of a former unincorporated division of Balis, of which David Doerge served as the head. (*Id.* ¶ 4.) Stone made multiple investments on behalf of the Anita M. Stone Family Trust and the Avery J. Stone



Trust that Doerge had introduced and recommended to him. (*Id.* ¶ 5.)

On April 6, 1996, Stone invested $100,000 in the Asian Opportunity Fund, a private placement, on behalf of the Avery J. Stone Trust. (*Id.* ¶ 24.) Doerge sent Stone a Confidential Information Memorandum, dated April 2, 1996, related to this investment. (*Id.* ¶ 25.) The Confidential Information Memorandum disclosed that David Doerge was a director in the fund, and warned that "An investment in the Shares involves certain risks relating to the investment strategies to be utilized by the Fund. No guarantee or representation is made that the Fund's Investment Objective will be successful." (*Id.* ¶¶ 26, 27.) Stone lost his investment in the Asian Opportunity Fund.

On June 30, 1997, Stone invested $200,000, on behalf of the Avery Stone Trust, in St. James Capital Partners, a limited partnership. (*Id.* ¶ 49.) In connection with this investment, Stone received from Doerge a private placement memorandum, a Limited Partnership Agreement and a Purchase Agreement. (*Id.* ¶ 50.) Stone executed and returned to St. James Capital Partners the signature pages for the Limited Partnership Agreement and the Purchase Agreement. (*Id.* ¶ 51.) The Limited Partnership Agreement disclosed that the General Partner had the "sole and absolute discretion to invest in Investments or direct or indirect interests therein; provided, however, that the General Partner will adhere generally to the asset allocation guidelines of: Bridge Loans, 50%; Short Term Convertible Debt, 25%; and Equity Investments, 25%." (*Id.* ¶ 52.) Further, the Purchase Agreement contained a warranty that the Purchaser "is able to bear the substantial economic risks of an investment in the Interests for an indefinite period of time, has no need for liquidity in the such investment and, at the present time, could afford a complete loss of such investment, " and that the Purchaser "recognizes that investment in the Interests involves

2

substantial risks, including loss of the entire amount of such investment." (*Id.* ¶¶ 53, 54.) Other documentation in connection with the investment detailed the risk factors involved in an investment in St. James Capital Partners, including that "the risks include, but are not limited to, complete loss of principal or investment, lack of liquidity and high volatility associated with the stock of portfolio companies and a very limited operating history." (*Id.* ¶ 55.)

On May 18, 1999, Avery Stone, on behalf of the Anita M. Stone Family Trust, invested $500,000 in Doerge Fortune Financial LLC ("Fortune"), a limited liability company. (*Id.* ¶ 32.) Stone executed a Subscription Agreement and a Limited Liability Company Agreement in connection with this investment. (*Id.* ¶ 33.) Stone also received a letter from Doerge Capital Management disclosing various facts related to Fortune and Fortune Financial Systems, Inc., the company to which Fortune was providing bridge loan financing. (*Id.* ¶ 34.) The Subscription Agreement informed Stone that any "investment in the Interests is inherently speculative in nature, and the undersigned may suffer a complete loss of his investment." (*Id.* ¶ 35.) Stone has not received any return on this investment.

On February 29, 2000, Stone invested $2,500,000 on behalf of the Trusts. The parties disagree over what Stone invested in. Stone contends that Doerge identified the investment as the "Doerge-TBU Bridge Loan LLC," the purpose of which was to make a secured short-term loan to an entity called travelbyus.com. (R. 78-1, Pl. Counterstmt. Facts ¶¶ 15-16.) Stone further asserts that Doerge told him that the TBU "was going to be borrowing money," and that the "TBU loan would be similar to other short term secured loans that Doerge had previously arranged for the Trusts." (*Id.* ¶¶ 17, 18.) Based on Doerge's alleged representations, Stone thought that Doerge had formed a limited liability company under the name of Doerge-TBU

Bridge Loan LLC, that Doerge served as its manager, that the Trusts had acquired a membership interest in it, that Doerge had invested the Trusts in it, and that the company had made a secured loan to travelbyus.com. (*Id.* ¶ 23.) On the other hand, Doerge contends that Stone made the February 29, 2000 investment in preferred stock of Aviation Group, Inc. (R.72-1, Defs. Stmt. Facts ¶ 39.) On April 24, 2000, Doerge Capital Management sent Stone Subscription Agreements, Investor Questionnaires and a Summary of Terms for an investment in Aviation Group. (*Id.* ¶ 40.) According to Doerge, these documents which disclosed the risks inherent in the purchase of Aviation Group stock, were for the investments Doerge had made in February 2000. (*Id.* ¶¶ 41, 43, 44.) Stone disputes this contention.

From March 2000 to February 2002, Doerge sent the Trusts monthly statements reflecting their investments in Doerge-TBU Bridge Loan LLC. (R. 78-1, Pl. Counterstmt. Facts ¶ 31.) The investments in TBU became a total loss. (*Id.* ¶ 49.)

Count I is premised on a violation of Section 12(a)(2) of the of the Securities Act of 1933 (the"Securities Act"), 15 U.S.C. 77l(a)(2)[1]. Count II alleges a violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b). In Count III, Plaintiffs allege a violation of Sections 15 of the Securities Act and 20(a) of the Exchange Act. Count IV is premised on common law fraud. Count V is a breach of a fiduciary duty, and Count VI is a negligent misrepresentation claim. In Count VII, Plaintiff asks for an accounting.

---

[1] Plaintiff agrees that summary judgment is appropriate on his Section 12(a)(2) claim because it is time barred.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the nonmoving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## LEGAL ANALYSIS

### I. Some of Plaintiff's Claims Are Time Barred

Defendants seek to dismiss Plaintiff's federal securities fraud and state law claims as time barred under the applicable statute of limitations and statue of repose.

## A. Federal Securities Fraud Claims

A plaintiff must file a federal securities fraud action "within one year after the discovery of the facts constituting the violation and within three years after such violation."[2] *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). The one-year statute of limitations for federal securities claims begins to run when the potential plaintiff is put on "inquiry notice." *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1334 (7th Cir. 1997). "Inquiry notice starts the running of the statute of limitations when the victim of the alleged fraud became aware of the facts that would have led a reasonable person to investigate whether he might have a claim." *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 609 (7th Cir. 1995) (quotation omitted). "However, more than 'merely suspicious circumstances' must exist; instead the plaintiff must learn of a circumstance that places him 'in possession of, or with ready access to, the essential facts that he needs in order to be able to sue.'" *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 (7th Cir. 1998) (*quoting Fujisawa Pharm.*, 115 F.3d at 1337).

The three year statute of repose commences from the date of the violation. Defendants argue that the three year statue of repose bars the claims based on Plaintiff's investments in Asian Opportunity, Triune and St. James. The Court agrees[3]. Although Plaintiff attempts to keep these

---

[2] On July 30, 2002, Congress enacted the Sarbanes-Oxley Act and expanded the limitations period for securities fraud claims involving "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" to two years after the discovery of the facts constituting the violation and within five years after such violation. 28 U.S.C. 1658(b). Because Plaintiff filed this case on February 27, 2002, the expanded limitations period does not apply here.

[3] In a footnote, Plaintiff agrees that the claims regarding Asian Opportunity and Triune "appear to be time barred." (R.80-1, Pl. Opp. at p15 n.12.)

6

claims alive by arguing that the Court should toll the repose period given Defendants' "aggressive and continuing cover up" of the fraud, the Supreme Court has made clear that "[t]he 3-year limit is a period of repose inconsistent with tolling." *Lampf*, 501 U.S. at 363, 111 S.Ct. at 2782. Further, "[b]ecause the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period." *Id.* Thus, "[t]he statute of repose for a federal securities claim may expire before the plaintiff discovers the fraud." *Neal v. Honeywell Inc.*, 33 F.3d 860, 865 (7th Cir. 1994). Accordingly, Plaintiff's attempt to rely on the tolling doctrine to toll the statue of repose for their securities fraud claims fails. As a result, Plaintiff's Section 12(2) and 10(b) claims based on the September 1, 1996 investment in Triune Venture Partners III LP, the April 6, 1996 investment in Asian Opportunity Fund, and the June 30, 1997 investment in St. James Capital Partners LP are time barred by the statute of repose because the violation in connection with these investments occurred more than three years before Plaintiff filed this lawsuit.

Because the alleged violation in connection with the May 18, 1999 investment in Doerge Fortune Financial LLC and the February 29, 2000 investment in the TBU Bridge Loan LLC took place less than three years before February 27, 2002, the statute of repose does not time bar these claims. Defendants further argue that the claims based on these investments are also barred by the one year statute of limitations. Viewing the facts in the light most favorable to Plaintiff, as the Court must, the Court cannot conclude that Plaintiff was on inquiry notice by February 27, 2001. Accordingly, summary judgement as to these claims is denied.

B.      **State Law Claims Based on the Securities Transactions**

Plaintiff's common law fraud (Count IV), breach of a fiduciary duty (Count V), and

negligent misrepresentation claims (Count VI) are based upon Defendants' allegedly fraudulent sale of securities, thus they are governed by the three year statute of limitations period and a five year statute of repose set forth in the Illinois Securities Act, 815 ILCS 5/13(D). *See Tregenza v. Lehman Bros., Inc.*, 287 Ill.App.3d 108, 109-110, 678 N.E.2d 14, 14-15, 222 Ill.Dec. 607, 608 (1st Dist. 1997). Although Plaintiff attempts to characterize the breach of fiduciary duty claim as not reliant on the fraudulent sale of securities and thus subject to a longer statute of limitations, the Court rejects this attempt to recharacterize the claim which Plaintiff has pled in the Second Amended Complaint and upon which Defendants have relied in defending this lawsuit. Given the five year statute of repose, the state law claims premised on the 1996 investments in Triune and Asian Opportunity are time barred. The Court cannot conclude, however, that the state law claims based on the other investments at issue in this case are barred by the five year statute of limitations as a matter of law. There is an issue of fact as to when Plaintiff had actual knowledge of the alleged violation or when Plaintiff had notice of sufficient facts which, in the exercise of reasonable diligence, would have lead to actual knowledge of the alleged violations. Accordingly, these claims are not time barred.

## II. The Elements of Plaintiff's Claims

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's claims because Plaintiff has failed to prove certain elements that are common to all of his claims. In order to survive summary judgment on a claim for securities fraud under Section 10(b) and Rule 10b-5, Plaintiff must show issues of fact that Defendants (1) made a false statement or omission; (2) of a material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which Plaintiffs justifiably relied; and (6) the reliance proximately caused

Plaintiffs' damages. *In re HealthCare Compare Corp.*, 75 F.3d 276, 280 (7th Cir. 1996).

A.  **Misrepresentations or Omissions of Material Facts**

Defendants argue that the alleged false statements are not material statements of fact. In the context of a securities fraud case, a misstatement or omission is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Basic Inc. v. Levinson*, 485 U.S. 224, *231, 108 S.Ct. 978, **983 (1988). *See also Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). As the Seventh Circuit has stated, "'the determination of materiality requires delicate assessments of the inferences a reasonable [investor] would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact; thus a materiality determination is rarely appropriate at the summary judgment stage, let alone on a motion to dismiss." *Marks v. CDW Computer Ctrs., Inc.*, 122 F.3d 363, 370 (7th Cir. 1997) (citations and quotations omitted). Here, the Court cannot conclude as a matter of law that the alleged misrepresentations and omissions are not material.

B.  **Reliance**

Reliance is an element of a Section 10(b) claim. *In re HealthCare*, 75 F.3d at 280. In Illinois, reliance is also an element of both common law fraud and negligent misrepresentation claims. *See Cozzi Iron & Metal, Inc. v. U.S. Office*, 250 F.3d 570, 574 (7th Cir. 2004), citing *Lidecker v. Kendall College*, 194 Ill.App.3d 309, 314, 141 Ill.Dec. 75, 550 N.E.2d 1121, 1124 (1st Dist.1990) (common law fraud); *Weisblatt v. Chicago Bar Ass'n*, 292 Ill.App.3d 48, 225 Ill.Dec. 993, 684 N.E.2d 984, 990 (1997) (negligent misrepresentation).

Defendants seek summary judgment on the argument that Plaintiff received written

documentation setting forth the nature of the risks inherent in each of Stone's investments, and therefore Plaintiff could not have justifiably relied on any *oral* statements that preceded the written documentation. Defendants contend that these subsequent written terms trump any oral statements regarding the investments.

### 1. Fortune

On May 18, 1999, Plaintiff invested $500,000 in Fortune, a private placement offering. (¶ 32.) Stone signed a subscription agreement for this investment acknowledging that "[t]here are substantial risks incident to the purchase of the Interests, as explained in the Investment Materials. An investment in the Interests is inherently speculative in nature, and the undersigned may suffer a complete loss of his investment." (R. 79-1, Pl. Resp. to Defs. Stmt. of Facts ¶ 35.) In addition, Doerge Capital Management sent Stone a letter regarding Fortune. (*Id.* ¶ 34.) That letter indicated the "company has experienced difficult times since 1997." (*Id.* ¶ 38.) Plaintiff does not respond to this argument regarding his investment in Fortune. In his complaint, Plaintiff alleges that Doerge represented to him that "this was a safe bridge loan investment." (R. 70-1, SAC, ¶ 29.) He generally asserts that "Doerge extolled his success in developing this collateralized bridge loan program stating '[o]ur prime concern is safety and payment of principal followed by a strong yield usually between 12-15%." (R. 78-1, Pl. Counterstmt. Facts, ¶ 13.) Even assuming that Doerge made this particular statement regarding the Fortune investment, Plaintiff could not have justifiably relied upon it when he contemporaneously executed a subscription agreement that informed him of the "substantial risks" involved in his investment. "[P]eople claiming to be *victims* of securities fraud may not claim to rely on oral statements inconsistent with written documents (even tedious prospectuses) available to them." *S.E.C. v.*

10

*Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998) (emphasis in original). Plaintiff has failed to raise any genuine issues of material fact regarding the reliance element of his investment in Fortune, thus summary judgment is granted as to this investment.

### 2. Doerge TBU Bridge Loan

Defendants also seek summary judgment on Plaintiff's claim based on the Doerge TBU Bridge Loan under the same reliance theory. They argue that Stone received, signed, and returned to Doerge a Subscription Agreement which fully disclosed the terms of his investment.

On April 24, 2000 – approximately two months *after* Plaintiff invested – Doerge Capital Management sent Stone subscription agreements, investors questionnaires and a summary of terms for securities in Aviation Group. There is an issue of fact as to whether these investment materials pertained to investments that Stone made in February 2000 or whether they pertained to a new proposed investment in Aviation Group. According to Plaintiff, in February 2000, Doerge solicited him to invest in the Doerge-TBU Bridge Loan LLC to make a "secured short-term loan to an entity called travelyus.com." (R.78-1, R.Pls. Stmt. Facts ¶¶ 15, 16.) Defendants, however, argue that the February 29, 2000 investment was in Aviation Group – the same investment set forth in the April 24, 2000 investment materials. Viewing these facts in the light most favorable to Plaintiff, summary judgment is precluded.

Even if an issue of fact did not exist regarding what investment Plaintiff made in February of 2000, summary judgment still is not warranted based on Defendants' reliance argument. Defendant did not send the materials with the disclosure until approximately two months *after* Plaintiff invested in Doerge-TBU Bridge Loan LLC. Moreover, there is an issue of fact as to whether the investment documents disclosed the truth. *Astor Chauffeured Limousine*

11

*Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1545 (7th Cir. 1990) (where a document is silent as to the issues that plaintiff claims were lies, it "does not prevent action based on an antecedent lie."). *See also Sequel Capital, LLC v. Rothman*, 2003 WL 22757758 at *16 (N.D. Ill. Nov. 20, 2003).

Defendants' reliance on *Rissman v. Rissman*, 213 F.3d 381 (7th Cir. 2000) is misplaced. In *Risman*, the Seventh Circuit held that a non-reliance clause in a written agreement precluded a plaintiff from premising his securities fraud claim on oral statements made prior to the execution of the written stock purchase agreement. *Id.* at 383-84. The non-reliance clause in *Rissman* specifically stated that the parties had not relied on any other representations. In contrast, the written purchase agreements at issue in this case did not contain any such provisions.

Similarly, *Carr v. CIGNA Sec., Inc.*, 95 F.3d 544 (7th Cir. 1996), does not provide otherwise. In *Carr*, the Seventh Circuit affirmed the dismissal of a securities fraud suit where the defendant provided the investor with contemporaneous documentation clearly stating that the investment was risky, even though the defendant allegedly orally stated that it was safe. The Seventh Circuit held that "[i]f a literate, competent adult is given a document that in readable and comprehensible prose says X .., and the person who hands it to him tells him, orally, not-X ..., our literate, competent adult cannot maintain an action for fraud against the issuer of the document." *Id.* at 547. The Seventh Circuit noted, however, that "not all disclaimers are clear." *Id.* at 548. Because there is an issue here of whether the written investment documents disclosed the truth and conflict with the oral statements, summary judgment is improper.

### 3. St. James

The securities fraud claim based on the St. James investment is time barred, but the state law claims of common law fraud and negligent misrepresentation remain as to the St. James

12

investment. Defendants argue that no issue of genuine facts exists regarding the element of justified reliance as to this investment. Plaintiff has failed to directly respond to this argument. The Court agrees with Defendants.

On June 30, 1997, Plaintiff invested $200,000 in St. James Capital Partners, L.P. He received a private placement memorandum, a Limited Partnership Agreement and a Purchase Agreement. He signed and returned both the Limited Partnership Agreement and the Purchase Agreement signature pages (R.72-1, Defs. Stmt. Facts ¶ 51.) The Purchase Agreement disclosed that "The Purchaser recognizes that investment in the interests involves substantial risks, including loss of the entire amount of such investment." (*Id.* ¶ 54.) The Limited Partnership Agreement disclosed that the general partner would invest in bridge loans, short term convertible debt, and equity investments. In his complaint, Plaintiff alleges that Doerge "held out St. James as a 'safe place' to invest and as an opportunity to realize 'greater-than-market' return at a 'lower-than-market risk." Although Plaintiff has not addressed the reliance argument for this investment, even if Doerge did make such a representation, it is directly contradicted by the terms of the Purchase Agreement which Plaintiff signed. Accordingly, reliance on any such statements is not justified and summary judgment is granted as to the common law fraud and negligent misrepresentation claims based on the St. James investment.

### C. Causation

Defendants argue that Plaintiff has failed to offer any evidence of loss causation. In the securities fraud context, the loss causation requirement requires a plaintiff to demonstrate that "the very facts about which the defendant lied ... caused its injuries." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). The Seventh Circuit has held that "[t]o

13

defeat [plaintiff's] claim at summary judgment, therefore, [defendant] would have to establish that, as a matter of undisputed fact, the depreciation in the value of the notes could not have resulted from the alleged false statement or omission of the defendant." *Id.* Defendants have not shown that "as a matter of undisputed fact" Plaintiff's loss "could not have resulted from the alleged false statement or omission of the defendant[s]." *Id.* at 650.

## III. Absence of Fiduciary Relationship

Defendants seek judgment on Plaintiff's claim for breach of a fiduciary duty. In order to succeed on a breach of fiduciary duty claim under Illinois law, a plaintiff must establish the following elements: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Romanek v. Connelly*, 324 Ill.App.3d 393, 404, 257 Ill.Dec. 436, 753 N.E.2d 1062, 1072 (1st Dist. 2001). A fiduciary relationship may "arise from the facts of a particular situation, for example, where there is trust reposed on one side and resulting superiority and influence on the other." *In re Estate of Rothenberg*, 176 Ill.App.3d 176, 179, 125 Ill.Dec. 739, 741, 530 N.E.2d 1148, 1150 (1988). Under Illinois law, brokers who receive fees or commissions for executing investment transactions can serve as agents to their customers, and thus have a fiduciary duty to their customers that is limited to actions occurring within the scope of their agency. *See Martin v. Heinhold Commodities, Inc.*, 117 Ill.2d 67, 78, 109 Ill.Dec. 772, 510 N.E.2d 840 (1987); *Index Futures Group, Inc. v. Ross*, 199 Ill.App.3d 468, 475, 145 Ill.Dec. 574, 557 N.E.2d 344 (Ill.App.1990). The fiduciary duty for a broker varies depending on whether he or she has discretionary trading authority over the account at issue. "The duty of care owed by a broker carrying a nondiscretionary account for a customer is an exceedingly narrow one, consisting at most of a duty to properly carry out transactions ordered by

14

the customer." *Index Futures Group, 199 Ill.App.3d at 475, 145 Ill.Dec. 574, 557 N.E.2d 344.* On the other hand, where an account is discretionary, the broker is a fiduciary. *See CFTC v. Heritage Capital Advisory Servs., Ltd.*, 823 F.2d 171, 173 (7th Cir. 1987). The parties here dispute whether Doerge had discretionary trading authority, thus an issue of fact exists and this issue is inappropriate for resolution on a summary judgment motion.

## CONCLUSION

As discussed above, Defendants' motion for summary judgment is granted in part and denied in part.

Dated: December 27, 2004

ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge